VIRGINIA:

IN THE CIRCUIT COURT FOR THE COUNTY OF BEDFORD

L.E.A, by her next friend Danisha Parker;  )
)
B.A., by her next friend Vicky Hairston;  )
)
K.A., by his next friend Vicky Hairston;  )
)
C.A., by his next friend Donna Mayhew;  )   Case No. _____
)
D.A., by his next friend Donna Mayhew;  )
)
K.A., by his next friend Tara Brown;  )
)
C.C., by her next friend Shannon Carper;  )
)
M.C., by her next friend Danisha Parker;  )
)
K.C., by her next friend Bridgett Craghead;)
)
K.C., by her next friends Barbara Hall and )
John Hall;
)
A.C., by her next friend Marionette )
Lipscomb and Jason Crider, Jr.;  )
)
J.E., by his next friend Nancy Lipcomb;  )
)
S.F., by her next friend Trina Brown;  )
)
A.H., by his next friend Chris Camyin;  )
)
A.H., by his next friend Chris Camyin;  )
)
N.G., by her next friend Terry Hubbard;  )
)
C.H., by his next friend Terry Hubbard  )
)
S.H., by her next friends Mae Langhorne )
and Trinette Langhorne;  )
)
P.H.L., by her next friends Mae Langhorne )
Trinette Langhorne;  )
)
A. M., by her next friend Ryan Martinez;  )



E.M., by his next friend Ryan Martinez;                              )
                                                                    )
K.M., by her next friend Annie Mae                                  )
Craghead;                                                           )
                                                                    )
M.M., by her next friend Barbara                                    )
Craghead;                                                           )
                                                                    )
S.Q., by her next friend Sheila Quarles;                            )
                                                                    )
C.Q., by his next friend Sheila Quarles;                            )
                                                                    )
N.R., by her next friend Sheila Alstin;                             )
                                                                    )
L.S., by her next friend Sheri Saul and                             )
Marchello Toms;                                                     )
                                                                    )
B.S., by his next friend Rhonda Overstreet;                         )
                                                                    )
A.S., by his next friend Lindsay Haynes;                            )
                                                                    )
S.S., by her next friend Lindsay Haynes;                            )
                                                                    )
K.S., by her next friend Desiree Hedrick;                           )
                                                                    )
C.S., by his next friend Jenna Stovall;                             )
                                                                    )
K.S., by her next friend Lindsay Haynes;                            )
                                                                    )
and                                                                 )
                                                                    )
A.H., by her next friend Anna Hagen;                                )
                                                                    )
        Plaintiffs                                                  )
                                                                    )
v.                                                                  )
                                                                    )
Bedford County School Board                                         )
SERVE:    Gary Hostutler,                                           )
          1155 Montview Ln.                                         )
          Forest, Virginia 24551                                   )
                                                                    )
Douglas Schuch                                                      )
Superintendent, Bedford County Public                               )

Schools )
310 South Bridge Street )
Bedford, Virginia 24523 )
)
)
Gary Hostutler )
Chairman, Bedford County School Board )
1155 Montview Ln. )
Forest, Virginia 24551 )
)
)
Julie M. Bennington )
Vice Chairman, Bedford County School )
Board )
108 Shadwell Dr. )
Lynchburg, Virginia 24503 )
)
)
Richard P. Downey )
Member, Bedford County School Board )
106 Duma Cir. )
Goodview, Virginia 24095 )
)
)
Kelly Harmony )
Member, Bedford County School Board )
2185 Magnolia Dr. )
Bedford, Virginia 24523 )
)
)
John H. Hicks, Jr. )
Member, Bedford County School Board )
3579 Evington Rd. )
Evington, Virginia 24550 )
)
)
Jason W. Johnson )
Member, Bedford County School Board )
6735 White House Rd. )
Moneta, Virginia 24121 )
)
and )
)
)
Kevin Willis )
Member, Bedford County School Board )
1813 Vista Circle )
Bedford, Virginia 24523 )
)
)
        Defendants. )

## COMPLAINT

Plaintiffs, all students at Body Camp Elementary School (BCES or the "School"), located in Bedford County, Virginia, hereby move for declaratory judgment, and for preliminary and injunctive relief to prevent the closing of and ensure the continued operation of the School, and to vacate the redistricting of its students (hereinafter the "Students") to other schools in Bedford County, because the decisions to close the School and to redistrict the Students disproportionately impacts racial minorities and discriminates against the disabled.

### INTRODUCTION

1.      Body Camp Elementary School is a historic black school in Bedford County, and was the first school in Bedford County to be integrated. The School, by far, has the highest percentage of minority students of any elementary school in Bedford County, and specifically has the highest percentage of African-American or black students.

2.      On June 5, 2014, four (4) members of the Bedford County School Board (*i.e.,* Hostutler, Bennington, Downey, and Hicks – the slimmest majority possible) voted to close the School, instead of closing Moneta Elementary School as recommended by an independent efficiency report. One or more of the individual school board members who voted for the closure were motivated by racial bias.

3.      As a result of the closure most of the minority students will be bused to Huddleston Elementary School, where the School Board's sole African-American elementary principal servers, resulting in overcrowding of that school and installation of mobile classrooms thereon to accommodate the overcrowding.

4.      The Board members who voted for the closure of the School relied upon the assertion that failing to close schools to save money was required to ensure receipt of promised state funding, but those Board members knew this assertion to be false. Moreover, the school kept open, Moneta Elementary School, requires an expenditure of over $400,000 to return its septic system to operation, which is contrary to the stated savings that Board members relied upon to justify closing the School.

5.      As alleged herein, one or more Board members have evidenced a racial bias that motivated their decision to close the school, and their decision in redistricting BCES students. Accordingly, the closure of the School is in violation of Equal Protection demanded by the Fourteenth Amendment to the United State Constitution; injunctive relief is appropriate herein and declaratory judgment should follow prohibiting closure of the School.

6.      Further, at least one student at BCES is a disabled student, requiring accommodation to fully obtain a free, public education. BCES is equipped to accommodate this student's needs, but the school to which she has been redistricted, Moneta Elementary School (MES), is not equipped to accommodate her needs, and the Bedford County School Board has declined to equip MES to accommodate her disability. This action is in violation of the Americans with Disabilities Act.

7.      Plaintiffs seek declaratory judgment, and temporary and permanent injunctive relief to prevent the closing and dismantling of BCES and to keep BCES open to serve its students and its community.

## VENUE

8.      Venue is proper in the Circuit Court for Bedford County as all parties to this suit reside in Bedford County and Body Camp Elementary School is located in Bedford County.

## THE PARTIES

9.      Plaintiffs are minors and students at Body Camp Elementary School, suing through their next friends, which next friends are either their parents or guardians.

10.     All Plaintiffs, but A.H., are African-American and/or black, and are, therefore, members of a racial minority group.

11.     Plaintiff A.H. is a disabled student who requires accommodation to take advantage of a free, public education in Bedford County. After voting to close the School, Defendants redistricted A.H. into the Moneta Elementary School district, which school is not equipped to accommodate A.H.'s needs to enable her to receive a free, public education.

12.     As a result of the closing of BCES all Plaintiffs will be required to travel much longer distances to other schools in Bedford County in order to receive a free, public education.

13.     Two Plaintiffs, L.S. and J.E., will be denied special services, namely the Day Treatment Program, they receive at the School if the closing of BCES is let stand.

14.     The Bedford County School Board is comprised of seven (7) members, and is the governing body responsible for operating, controlling and supervising the provision of a free public education within Bedford County, Virginia.

15.     Douglas Schuch is the Superintendent of Bedford County Public Schools and serves as the the chief executive officer working for and under the Bedford County School

Board to operate, control and supervise the provision of a free public education within Bedford County, Virginia. Schuch is sued in his official and individual capacity.

16.  Gary Hostutler is the Chairman of the Bedford County School Board. Hostutler voted to close Body Camp Elementary School. Hostutler is sued in his official and individual capacity.

17.  Julie M. Bennington is the Vice-Chair of the Bedford County School Board. Bennington voted to close Body Camp Elementary School. Bennington is sued in her official and individual capacity.

18.  Richard P. Downey is a member of the Bedford County School Board. Downey voted to close Body Camp Elementary School. Downey is sued in his official and individual capacity.

19.  Jason W. Johnson is a member of the Bedford County School Board. Johnson is sued in his official and individual capacity.

20.  John H. Hicks, Jr. is a member of the Bedford County School Board. Hicks voted to close Body Camp Elementary School. Hicks is sued in his official and individual capacity.

21.  Kelly Harmony is a member of the Bedford County School Board. Harmony is sued in her official and individual capacity.

22.  Kevin Willis is a member of the Bedford County School Board. Willis voted to close Body Camp Elementary School. Willis is sued in his official and individual capacity.

23.  For all purposes relevant to this Complaint, Defendants have acted and continue to act under color of state law.

## FACTS

24.     The foregoing paragraphs are adopted and re-alleged herein as if fully set forth.

25.     Plaintiffs are residents of Bedford County entitled to a free, public education.

26.     Body Camp Elementary School is an historic black school in Bedford County – the school opened in 1959 as a segregated school for black students, and was later the first school in Bedford County to be integrated.

27.     The School is located in a part of Bedford County with a significant racial minority population.

28.     BCES is a Title I school with 70% to 80% of it students receiving free/reduced lunch, in an economically challenged community.

29.     BCES has a Day Treatment Program to assist children with specific educational challenges that is not available at the schools to which the Students are being redirected due to the closing of the School.

30.     BCES facilities are handicapped accessible, *i.e.,* are designed to accommodate persons with disabilities.

31.     Moneta Elementary School, one school to which BCES students are being redistricted, is not handicapped accessible.

32.     Recent statistics indicate that of 188 students at the School 56 are racial minorities: 29.7% of the Body Camp students are minorities.

33.     Of 234 students at MES, on the other hand, only 25 (or 11.9%) are a racial minority, according to these same statistics.

34.     In 2012 the City of Bedford reverted to Town status, meaning that the schools in the City of Bedford became part of the Bedford County Public Schools, governed by the Bedford County School Board.

35.     Legislation enacted into law related to the reversion included a provision that provided additional funding to the Bedford County School Board over the next 15 years if the School Board undertook an efficiency review, and if the General Assembly's biennial budgets included the funding provision for each applicable budget cycle.

36.     Contrary to statements made by some members of the School Board, this ongoing funding is not contingent upon the School Board closing schools or even demonstrating a savings in operation of its school system.

37.     In accordance with the law, the School Board retained an independent, third party, Prismatic Services, Inc. (Prismatic), to perform the efficiency review.

38.     While Prismatic was conducting the research to complete the efficiency review, Superintendent of the Bedford County Public Schools, Douglas Schuch, attempted to influence the outcome of the report by advising Prismatic staff that he sought the closure of three (3) schools, to include Body Camp Elementary School.[1]

39.     On May 15, 2014 Prismatic presented its findings to the Bedford County School Board at a meeting open to the public.

40.     Prismatic's "biggest recommendation" in the presentation was to close Moneta Elementary School and Bedford Primary School.

---

[1] While seeing the closure of three (3) schools, Schuch also sought the addition/creation of a dozen new administrative positions.

41.     When Prismatic announced this "biggest recommendation" School Board Chairman Hostutler questioned why Prismatic recommended closing MES and not Body Camp Elementary School.

42.     Three weeks later, on June 5, 2014, the School Board – namely Hostutler, Bennington, Downey, and Hicks, voted to close the School.

43.     Prior to the vote to close the School, the School Board held a public hearing over whether to close MES or BCES. At that meeting the School Board permitted only two persons to speak on behalf of Body Camp, but several speakers were permitted to speak in support of MES.

44.     Prior to the vote to close the School, School Board members conducted walk-throughs of BCES and MES. Anyone interested was permitted to accompany the School Board members on the walk-throughs.

  a.     In advance of the walk-throughs at BCES, however, parents and persons interested in keeping the School open were instructed in writing that no one was allowed to speak during the walk-through.

  b.     Then, during the walk-through at BCES the lights were not even turned on, and the School Board members present did not tour the entire facility.

  c.     During the tour Chairman Hostutler commented on donated materials being gathered in one are of the school as creating clutter and commented, "I just thought that is the way things were done here."

45.     During the tour of MES, however, the school was permitted to conduct an open house: complete with a large crowd, professionally produced signs, and volunteers and staff wearing professionally produced t-shirts

  a.     MES ensured that extra-curricular activities were going on during the tour, such as gardening, and several parents and students spoke to the Board members during the tour.

  b.     MES parents and interested individuals were not instructed to not speak during the walk-through.

  c.     During this walk-through Hostutler commented that MES was a "much more inviting, nicer school than Body Camp."

46.     The School Board voted to close the School without any planning as to how the students displaced from the School would be affected.

47.     On the other hand, before the School Board voted to close Thaxton Elementary School (TES), a school with a very small minority population, the School Board went to great lengths to inform and address concern raised by parents of that school as to how TES students would be affected, specifically in new bus routes and redistricting. Specifically, School Board Member, Downey stated, "you cannot close a school before the re-zoning is done. That is unfair to the children and parents."

48.     The School Board went so far as to hold a public hearing over the redistricting of TES students and to permit concerned parents to address issues with their children individually, all of which occurred before the Board voted to close TES.

49.     BCES students and parents were not given the same consideration: as to students displaced by the vote to close BCES the School Board merely posted to the school

system's website a proposed redistricting plan in September 2014, more than three (3) months after voting to close the School.

50.     The plan posted to the school website to redistrict the BCES students involved moving students among several schools: BCES, MES, Stewartsville Elementary Schools, Goodview Elementary School and Huddleston Elementary School.

　　　　a.     Students from BCES would be distributed among MES, Huddleston and Stewartsville, and

　　　　b.     Some students from those three (3) schools would be redistricted among MES, Stewartsville, Goodview and Huddleston, to accommodate the increased enrollment at those schools from BCES, and to address transportation/geographical considerations.

　　　　c.     School system staff compiled this redistricting plan using a computer program designed specifically for the purpose of redistricting.

51.     On October 16, 2014 the School Board held a public meeting to consider the redistricting of students displaced by the vote to close BCES.

52.     During the public meeting parents and others concerned were allowed to speak to the proposed redistricting plan at the beginning of the meeting.

53.     Then, after the public comment portion of the meting ended, the Board considered a previously not disclosed recommendation to move only students from BCES, and not move students from any other school, as recommended by the original proposal.

54.     The undisclosed plan still involved moving students from BCEs to Huddleston and MES, but instead of Stewartsville, the new plan included moving the students originally planned to be move to Stewartsville to Goodview, in order to transport

students to Goodview the students would have to be transported past Stewartsville Elementary on their way to Goodview, resulting in an even longer bus ride.

55.    Further, the plan to transport BCES students past Stewartsville Elementary School to Goodview Elementary School would require a bus to pick up students along Route 24. Route 24 transverses the County east to west in the southern portion of the County, and is a major artery for traffic in that portion of the county.

56.    Instead of approving a redistricting plan that involved a bus traveling both directions of Rte 24 to pick up (the former) BCES children, the Board approved only a single bus to transverse Rte 24 in one direction. Accordingly, elementary-aged children would be required to cross the major thoroughfare that is Rte 24 to catch the bus.

57.    The children affected by this redistricting plan are disproportionately black or African-American.

58    When the Board considered this new redistricting plan, to bypass Stewartsville and transport former BCES students to Goodview, parents and persons concerned for BCES students were not permitted to comment.

59.    The redistricting approved by the Board resulted in much longer bus rides, in many cases longer than 45 minutes, for those students redistricted into the Goodview Elementary School, especially given that those students will be going past Stewartsville Elementary School to reach Goodview.

60.    Low-income families will have difficulty finding transportation for their children transferring to new schools.

61.     Further, under the plan approved by the Board many of the minority students from BCES were redistricted to Huddleston Elementary School where the sole African-American elementary school principal in the County is assigned.

62.     And the influx of students to Huddleston will overcrowd that school resulting in the need to employ and use mobile classrooms: no such mobile classrooms were in use at BCES.

63.     Accordingly, the redistricting necessitated by the closing of BCES affected no students other than those from BCES.

64.     At the meeting to vote to close BCES the Chairman Hostutler addressed the proposed $400,000 cost to repair the septic system at MES: He announced that the School Board would fund the costs to fix the septic system, a cost that would have been unnecessary had the vote been to close MES; BCES, on the other hand, required no maintenance or facilities expenditures to remain open and operating.

65.     The closing of BCES and redistricting of the Students results in at least two minority students not receiving or being able to avail themselves of the Day Treatment Program, and will result in at least one Plaintiff, A.H., not being able to attend a school equipped to accommodate her disability. Further, to equip MES to accommodate this one student will require expenditure of funds at MES, funds that would not be necessary had BCES been kept open.

66.     At one point during meetings to consider which schools to close and the aftermath of the decision to vote to close BCES, Chairman Hostutler referred to students at Body Camp Elementary School as "those kinds of people."

67.     Chair Gary Hostutler evidenced racial bias by making light of the first African-American superintendent of Bedford County's black schools, Susie B. Gibson.  In discussions of what to name the new school being built in Bedford county he commented, "we can name it after, like, that Susie B. Gibson, or whoever that women was that we named that school after, or whatever she did." To Hostutler;s comment the School Board and central office staff present erupted in laughter, evidencing racial bias.

    a.     By way of information, Bedford Educational Technology Center was first named Susie B. Gibson School and it was the first African-American High School in the Town  of Bedford.

    b.     Susie B. Gibson devoted more than 40 years educating Bedford County's African-American youth, 25 of those years she served as the superintendent of black schools, working most of the time as a supervisor paid by the Jeanes Fund. The Susie B. Gibson High School was named in her honor.

68.     Hostutler has further evidenced his view that BCES is not preferred because of the community in which it is located:  he has repeatedly said at many meetings that, "we have to hurry and sell Body Camp because it will get vandalized." He said "maybe we can sell it to someone who can start a brewery there or that could do low income housing." On the other hand, when he speaks of Thaxton he says "with Thaxton maybe a church will come along and want that building."

69.     Further, the redistricting of the school districts dilutes the minority votes of African-American persons in the Body Camp community: their votes will be diluted by the Moneta area of the County.

70.    The Defendants further evidenced their racial *animus* by attempting to empty the school of its contents before the end of the school year, while delaying the emptying of TES.

71.    Hostutler further showed racial bias, when he said, "the only reason TES has good test scores was because [it doesn't] have any 'black children' ... because it was a proven fact that black children did not test as well as white children."

72.    Closing of BCES causes the Body Camp community to lose a central institution of learning and activity, and communities that have invested in their local schools, will no longer have a focal point where one can feel safe, promote citizenship, or maintain a sense of community.

73.    For these reasons, Defendants have not demonstrated a convincing educational necessity for why it is making decisions in the way that it has, especially when those decisions are having disparate impacts on racial minorities and students with disabilities.

74.    Huddleston is at or over capacity with addition of BCES students, requiring installation and use of mobile classrooms, and the majority of the minority students from BCES have been redistricted into the Huddleston School district.

75.    At end of 2013-14 school year, before the Board voted to close BCES, BCES students were given a letter from Chairman Hostutler to take home to their parents announcing the possible closing of either MES or BCES, despite the "biggest recommendation" of Prismatic, the independent evaluator, was to close MES. The letter sent home with students even reference that "[MES] has recently experienced a major failure of its septic system and will require significant work and expenses which is

estimated to cost over $400,000." The Board was planning to close BCES with only days of

the efficiency review report that recommended closing other schools.

## COUNT I
### Violation of Title II of the ADA

76.     The foregoing paragraphs are adopted and re-alleged herein as if fully set

forth.

77.     In violation of Title II of the ADA and by the acts set forth above, the

Defendants have failed to take in account the special needs of the plaintiff children.

78.     In violation of Title II of the ADA, and by the acts set forth above, the

Defendants have acted in a manner that will cause disproportionate harm to the plaintiff

special needs children.

79.     The decision to close BCES will have a disproportionately adverse effect on

students with disabilities.

80.     Defendants will also disrupt the programs for children in special education in

the receiving schools and inflict the same irreparable injury on them as well.

81.     Defendants have violated their duty to provide a "reasonable

accommodation" to these children by leaving them exactly where they are.

82.     Plaintiffs have been injured as a result of Defendants' acts or omissions in an

amount to be proven.

83.     Plaintiffs A.H., L.S. and J.E. are qualified individuals with disabilities. There is

no compelling government interest nor rational basis for the closure of BCES.

84.    In deciding to close BCES, Defendants intentionally discriminated against Plaintiffs by singling out a disabled population. Defendants were inconsistent, arbitrary, and/or manipulated to achieve a discriminatory result.

85.    In making the decision to close BCES, Defendants chose the option that will have a disproportionate, adverse impact on disabled Plaintiffs and the communities within the District subject to school closures, and was motivated by a discriminatory intent and purpose.

86.    Defendants' decision to close BCES violated and, if effectuated, will continue to violate rights guaranteed to Plaintiffs by the Americans with Disabilities Act, codified in 42 U.S.C. § 12131, et seq., which prohibits discrimination against qualified individuals on the basis of disability.

87.    An actual and substantial controversy exists between Plaintiffs and the Defendants, as to their respective legal rights and duties. Plaintiffs make the contentions as alleged above, while, on information and belief, Defendants deny Plaintiffs' contentions.

88.    If not enjoined by the Court, Defendants will proceed with the closure of the seven elementary schools, in derogation of the rights of Plaintiffs, resulting in irreparable injury. Plaintiffs have no plain, speedy and adequate remedy at law.

WHEREFORE plaintiffs pray this Court to:

A. Declare that by the acts set forth above, the defendants have threatened to violate the rights of plaintiffs and the plaintiff class under Title II of the ADA;

B. Enjoin the defendants from carrying out the closing of BCES; and

C. Grant plaintiffs their fees and costs and such other relief as the Court deems just and equitable.

## COUNT II
### Violation of the 14th Amendment
School Board used Race as a motivating factor in deciding which schools to close

89.     The foregoing paragraphs are adopted and re-alleged herein as if fully set forth.

90.     Plaintiffs are similarly situated to all other school children living in neighborhoods within Bedford County that will not be subject to a school closure.

91.     There is no compelling government interest nor rational basis for the closure of Body Camp Elementary School,

92.     In deciding to close BCES Defendants intentionally discriminated against Plaintiffs by singling out a predominantly poor, nonwhite student population.

93.     In making the decision to close BCES, Defendants chose the to close the school that will have a racially disproportionate adverse impact on Plaintiffs and the community within the closure area.

94.     Defendants' decision to close BCES violated and, if effectuated, will continue to violate rights guaranteed to Plaintiffs by 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, which prohibits discrimination against individuals on the basis of race and/or national origin.

95.     The Defendants' disparate treatment of Plaintiffs actually and proximately caused, and will continue to cause, economic harm, pain and suffering and severe emotional distress, including, but not limited to, the negative social psychological and academics effects of racial discrimination, longer bus rides/travel each child would be forced to endure twice each day, the consequent loss of important time needed to study and to participate in educational activities and events, the potential loss of access to

programs and transportation to programs which will not be available at a reassigned

school, and the obstacles that parents would face, many of whom do not have cars or the

ability to transport their children and none of whom had unlimited time, preventing them

from getting to their children's new, farther-away school to participate in school activities,

including, but not limited to, activities that would serve to educate students.

96.     If not enjoined by the Court, Defendants will proceed with the closure of

BCES, in derogation of the rights of Plaintiffs, resulting in irreparable injury. Plaintiffs have

no plain, speedy and adequate remedy at law.

97.     The District cannot demonstrate a "substantial legitimate justification"

because it cannot show how the proposed closings will provide any educational benefit.

However, the Plan will only continue to disproportionately and adversely impact students

of color, those with disabilities and those who those communities.

98.     The Defendants cannot demonstrate a "substantial legitimate justification"

for the disparate impact because it cannot show that its drastic plan to close BCES is an

educationally necessary action that relates to meeting its educational goals.

99.     Title 42 U.S.C. § 1983 provides, "Every person who under color of any statute,

ordinance, regulation, custom, or usage, of any State or Territory or the District of

Columbia, subjects, or causes to be subjected, any citizen of the United States or other

person within the jurisdiction thereof to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured in an

action at law, suit in equity, or other proper proceeding for redress."

100.   Defendants' decision to close BCES and redistrict the BCES students denies students of color, those with disabilities and those residing in low income neighborhoods equal protection in violation of the United States Constitution.

101.   Plaintiffs have been injured as a result of Defendants' acts or omissions in an amount to be proven.

## COUNT III
### Violation of Title VI of the 1964 Civil Rights Act

102.   Plaintiff repeats and re-alleges each and every allegation contained heretofore.

103.   Title VI of the 1964 Civil Rights Act and the Department of Education regulations implementing that Act, like the D.C. Human Rights Law, prohibit recipients of federal funding from discriminating based on race, color, or national origin, 42 U.S.C.A §§ 2000d-2000d-7.

104.   Under Department of Education regulations, schools and districts violate federal law when they adopt and implement facially neutral policies, and the policies nonetheless have an unjustified effect on students on the basis of race or disability.

105.   Any fair analysis of the facts in the instant situation clearly demonstrates the presence of a *prima facie* case of disparate impact.

106.   As a consequence, it is within the jurisdiction of this Honorable Court to mandate that appropriate government authorities take steps to ensure compliance with Title VI of the 1964 Civil Rights Act.

107.   Plaintiffs have been injured as a result of Defendants' acts or omissions in an amount to be proven.

## PRAYER FOR RELIEF

108.    WHEREFORE, Plaintiffs demand judgment and permanent relief against Defendants as follows:

    a.    Finding that Defendants have violated the Plaintiffs' rights.

    b.    Finding that Defendants violated the Americans with Disabilities Act.

    c.    Finding that Defendants violated the Individuals with Disabilities Act (IDEA).

    d.    Finding that Defendants violated the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

    e.    Finding that Defendants violated Title VI of the 1964 Civil Rights Act and mandating that Defendant Mayor Gray take action to overcome the violations of that Act.

    f.    Finding that Defendants, through their acts and omissions, have harmed the education of the Plaintiffs.

    g.    Granting a temporary and permanent Injunction, preventing Defendants from further taking action to implement the proposed school closure.

    h.    Granting Permanent Injunctive relief suspending the implementation of the closure of BCES.

    i.    Awarding Plaintiffs the costs and expenses of this action, including reasonable attorneys' and experts' fees.

    j.    Granting injunctive relief against Defendants to prevent future wrongful conduct.

k.    Awarding Plaintiffs such other and further relief as this Court deems

just, equitable, and proper.

## DEMAND FOR JURY TRIAL

TRIAL BY JURY IS DEMANDED.

RESPECTFULLY SUBMITTED,

L.E.A, by her next friend Danisha Parker;
B.A., by her next friend Vicky Hairston;
K.A., by his next friend Vicky Hairston;
C.A., by his next friend Donna Mayhew;
D.A., by his next friend Donna Mayhew;
K.A., by his next friend Tara Brown;
C.C., by her next friend Shannon Carper;
M.C., by her next friend Danisha Parker;
K.C., by her next friend Bridgett Craghead;
K.C., by her next friends Barbara Hall and
John Hall;
A.C., by her next friend Marionette
Lipscomb and Jason Crider, Jr.;
J.E., by his next friend Nancy Lipcomb;
S.F., by her next friend Trina Brown;
A.H., by his next friend Chris Camyin;
A.H., by his next friend Chris Camyin;
N.G., by her next friend Terry Hubbard;
C.H., by his next friend Terry Hubbard
S.H., by her next friends Mae Langhorne
and Trinette Langhorne;

P.H.L., by her next friends Mae Langhorne
Trinette Langhorne;
A. M., by her next friend Ryan Martinez;
E.M., by his next friend Ryan Martinez
K.M., by her next friend Annie Mae
Craghead;
M.M., by her next friend Barbara
Craghead;
S.Q., by her next friend Sheila Quarles;
C.Q., by his next friend Sheila Quarles;
N.R., by her next friend Sheila Alstin;
L.S., by her next friend Sheri Saul and
Marchello Toms;
B.S., by his next friend Rhonda Overstreet;
A.S., by his next friend Lindsay Haynes;
S.S., by her next friend Lindsay Haynes;
K.S., by her next friend Desiree Hedrick;
C.S., by his next friend Jenna Stovall;
K.S., by her next friend Lindsay Haynes;
and
A.H., by her next friend Anna Hagen,

Of Counsel

Melvin E. Williams (VSB No. 43305)
  *mel@melwilliamslaw.com*
Micah D. Wright (VSB No. 88129)
  *micah@melwilliamslaw.com*
MEL WILLIAMS PLC
1320 Third Street, SW
Roanoke, Virginia 24016
540-266-7800
540-206-3857 *facsimile*
*mel@melwilliamslaw.com*
      Counsel for Plaintiffs