# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| L.E.A., *et al.*, | CIVIL NO. 6:15-cv-00014 |
| *Plaintiffs,* | |
| v. | <u>Memorandum Opinion</u> |
| BEDFORD COUNTY SCHOOL BOARD, *et al.*, | |
| *Defendants.* | JUDGE NORMAN K. MOON |

On June 5, 2014, Defendant Bedford County School Board ("Defendant" or "School Board") voted to close Body Camp Elementary School ("Body Camp"). Later, on December 15, 2014, the School Board adopted its plan for how to redistrict Body Camp students. Plaintiffs, guardians and parents of African-American children who attended Body Camp, filed this action pursuant to 42 U.S.C. § 1983, claiming that the closure and redistricting plan violate the Equal Protection Clause of the Fourteenth Amendment ("Equal Protection Clause") as well as Title VI of the Civil Rights Act of 1964 ("Title VI"). Plaintiffs now move this Court to preliminarily enjoin the School Board from carrying out its decision to close Body Camp and redistrict its students. As set forth below, Plaintiffs have not met their burden of establishing that preliminary injunctive relief is warranted, and Plaintiffs' motion will therefore be denied.

## I. FACTUAL BACKGROUND

On May 3, 2013, the Virginia General Assembly amended its budget to require Bedford County Public Schools to undergo an efficiency review. The purpose of such a review is to eliminate wasteful spending in non-instructional school functions, so that savings can be channeled into funds for classroom education. In October 2013, the Virginia Department of

Planning and Budget selected Prismatic Services to perform the review.

Prismatic began their work in November 2013. Eight Prismatic consultants conducted the project, and in doing so, they interviewed school board members and various administrative staff, toured school facilities, and observed daily operations at each Bedford County elementary school. Prismatic finished their efficiency review in December 2013, and on May 15, 2014, Prismatic presented their findings and conclusions to the School Board at a public meeting. Based on declining enrollment projections, Prismatic recommended the closure of two small elementary schools. Prismatic identified six different schools as potential candidates for closure: Bedford Primary School, Body Camp, Huddleston Elementary School, Moneta Elementary School, Otter River Elementary School, and Thaxton Elementary School.[1]

Prismatic also provided four recommendations regarding which two schools would be most appropriate to close. Of the recommendations, Prismatic concluded the best option would be to close Bedford Primary and Moneta Elementary School. They qualified their recommendation, however, noting that if Thaxton Elementary School was subsequently determined to be "unsafe," then the next best option would be to close Body Camp and Thaxton Elementary School. The School Board ultimately found that Thaxton Elementary School was, indeed, unsafe, and that the long term upkeep of Body Camp would be substantially more expensive than the costs of maintaining Moneta Elementary School. The School Board subsequently voted to close Body Camp and Thaxton Elementary School on June 5, 2014.

---

[1] Body Camp, located in Bedford, Virginia, and opened in 1959 as an African-American elementary school, had the most significant percentage of minority enrollment for Bedford County elementary schools during the 2013-2014 school year. Body Camp's racial make-up was 32 percent minority and 68 percent white (184 total students; 43 African American, 11 biracial, 5 Hispanic, 125 White). Of the schools considered for closure, only Bedford Primary had comparable demographics. Its make-up was 29 percent minority and 71 percent white (271 total students; 1 American Indian, 1 Asian; 56 African American, 7 Hispanic, 14 biracial, 192 white). These statistics were drawn from data collected by the Virginia Department of Education.

In the days leading up to the decision to close Body Camp, Plaintiffs claim the School Board treated Body Camp differently than Moneta Elementary School. For example, during the Body Camp walkthrough, Plaintiffs allege the lights were turned off, parents were told not to speak, and the School Board failed to tour the entire facility. This contrasts with the walkthrough at Moneta Elementary School, a predominately white school, where Plaintiffs allege that the "the commands to be quiet were not given . . . [and] the Board . . . was welcomed with an open house style event, complete with bottled water for attendees, banners, and fanfare." Pls.' Mem. at 6. However, Ryan Edwards, the Bedford County Public Schools employee charged with running the events, states that both walkthroughs were conducted in the same manner, and that Moneta Elementary School received no special treatment or consideration.

Later, on October 16, 2014, the School Board conducted a public hearing on the issue of Body Camp's redistricting plan. The plan detailed the manner in which displaced students would be relocated to other schools. Plaintiffs concede they had the opportunity to review the plan in advance of the hearing, as it had been posted to the school system's website in September 2014. Though the hearing was open to the public, only three persons spoke, and none addressed the issue of Body Camp redistricting. The School Board therefore adopted the redistricting plan without objection, and as a result, former Body Camp students will now attend Goodview Elementary School, Huddleston Elementary School, and Moneta Elementary School.

## II. LEGAL STANDARD

A preliminary injunction constitutes "an extraordinary remedy" granted at the discretion of the district court. *Real Truth About Obama v. Federal Election Com'n*, 575 F. 3d 342, 345 (4th Cir. 2009), *vacated on other grounds* 559 U.S. 1089 (2010). The Supreme Court of the United States has articulated what a movant must show to obtain a preliminary injunction: "[1]

3

that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008). Moreover, the party seeking injunctive relief must demonstrate by "a clear showing" that he is likely to succeed on the merits at trial. *Real Truth*, 575 F.3d at 345.

### III. DISCUSSION

#### A. Likelihood of Success on the Merits

To have a likelihood of success on the merits, Plaintiffs must first show that racially discriminatory intent motivated either the School Board's decision to close Body Camp or the adoption of its redistricting plan. *Peters v. Jenney*, 327 F.3d 307, 315 (4th Cir. 2003); *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 819 (4th Cir. 1995); *see also Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 348 F. Supp. 2d 398, 452 (D. Md. 2005) ("Under Fourth Circuit case precedent, a state actor's conduct violates Title VI only where this conduct constitutes purposeful discrimination in violation of the Equal Protection guarantees of the U.S. Constitution."). "Determining whether invidious discriminatory purpose was a motivating factor [in an actor's decision] demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). When direct evidence is unavailable, as is the case here, courts look to the following factors in determining whether a decision-making body was motivated by racial animus:

> (1) evidence of a 'consistent pattern' of actions by the decision-making body disparately impacting members of a particular class . . . (2) historical background of the decision, which may take into account any history of discrimination by the decision-making body or the jurisdiction it represents; (3) the specific sequence of events leading up to the particular decision being challenged, including any significant departures from normal procedures; and (4) contemporary statements by decision makers on the records or in minutes of their meetings.

4

*Sylvia*, 48 F.3d at 819.  Moreover, "[t]he impact of the official action and whether it bears more heavily on one race than another . . . provide[s] an important starting point" in analyzing an actor's intent.  *Arlington Heights*, 429 U.S. at 266; *see also Sylvia*, 48 F.3d at 823 (recognizing that "discriminatory impact, if shown, may be probative . . . on the issue of intent").

a.   *The School Board's Decision to Close Body Camp*

Plaintiffs first argue that the School Board's decision to close Body Camp disproportionately burdens racial minorities, which they claim provides strong evidence of Defendants' discriminatory intent.  In determining whether an impact is sufficiently "disparate" to permit an inference of animus, district courts compare the "racial composition of the schools selected for closure . . . [with] the schools that remained open."  *A.A. v. Raymond*, No. 2:13-cv-01167, 2013 WL 3816565, at *16 (E.D. Cal. July 22, 2013); *accord Smith v. Henderson*, 944 F. Supp. 2d 89, 101 (D.D.C. 2013).  Plaintiffs' disparate impact evidence consists of a comparison between the demographics of Body Camp and Moneta Elementary School, a predominately white school that the School Board also considered closing.  During the 2013-2014 school year, 32 percent of Body Camp's student enrollment consisted of racial minorities (184 total students; 43 African American, 5 Hispanic, and 11 biracial students).  During the same year at Moneta, only 12 percent of its students identified as minorities (236 total students; 3 Asian, 17 African American, 3 Hispanic, and 6 biracial students).  Even assuming this is an appropriate comparison, Plaintiffs' statistics provide weak evidence of Defendants' intent to discriminate.

In *Williams v. Hansen*, 326 F.3d 569, 585 (4th Cir. 2003), the United States Court of Appeals for the Fourth Circuit found strong evidence of discriminatory intent where the challenged policy "bore exclusively on one race."  *See also Spurlock v. Fox*, 716 F.3d 383, 402 (6th Cir. 2013) (recognizing that disparate impact evidence may permit an inference of animus

only where the challenged policy is "overwhelmingly or suspiciously concentrated upon [minority] citizens"). Here, by contrast, the closure of Body Camp does not "exclusively" affect minorities. In fact, during the 2013-2014 school year, nearly 70 percent of Body Camp students identified as white. Accordingly, though the Body Camp closure affects a more significant amount of minorities relative to the racial composition of Moneta Elementary School, "the negative impact of the [closure] is not so overwhelmingly . . . concentrated upon [minority or black] citizens as to leave no room for an inference other than [discriminatory] intent." *Id.*

Plaintiffs present the following as "other evidence" of racial animus: (1) the School Board ignored the advice of Prismatic regarding its recommendation to close Moneta Elementary School; (2) the School Board conducted "walkthroughs" of Body Camp and Moneta in a manner that disadvantaged Body Camp; and (3) Gary Hostutler, Chairman of the School Board, made racially insensitive comments in the events leading up to the decision to close Body Camp. For example, in a conversation with a parent from Thaxton, Hostutler stated that "the only reason that Thaxton students scored higher on their test scores was because Thaxton did not have any black students." Pls.' Mem. at 13. He said it was a "proven fact that white children tested better than black children." *Id.* Plaintiffs allege such evidence is sufficient to show that racially discriminatory intent motivated the School Board's decision to close Body Camp.

However, there is also evidence in the record that the School Board closed Body Camp because the school's long-term maintenance needs were substantially greater than those at Moneta Elementary School, which is supported by the findings in Prismatic's review. Moreover, the circumstances surrounding the School Board's decision do not necessarily indicate an intent to discriminate against minority students. The School Board ultimately considered closing four elementary schools in Bedford County: Bedford Primary, Thaxton Elementary, Moneta

6

Elementary, and Body Camp. Along with Body Camp, the School Board voted to close Thaxton Elementary, a school that was overwhelmingly white, rather than Bedford Primary, a school that was very similar to Body Camp in terms of its racial demographics.

### b. The School Board's Redistricting Plan

Plaintiffs' next basis for injunctive relief is their claim that racial animus motivated the School Board's redistricting plan for Body Camp students. In support, Plaintiffs assert that the School Board gave white parents at Thaxton the opportunity to provide input regarding its redistricting plan, while parents at Body Camp were not given the same privilege. However, the School Board held a public meeting on the issue of Body Camp's redistricting plan, and Plaintiffs concede they had the opportunity to review the proposed plan in advance of the hearing, as it had been posted to the school system's website in September 2014. Yet at the meeting, only three persons spoke, and none touched on the issue of redistricting. It thus appears Body Camp and Thaxton parents were given the same opportunity to provide input in the plan.

Plaintiffs also claim that the redistricting plan unfairly affects racial minorities. Their only evidence in this regard consists of the affidavit of Penny Berger, a long-time resident of the Body Camp school district. Tr. of Hr'g on Pls.' M. for Prelim. Inj. at 20, 22-25, July 9, 2015. In her affidavit, Berger states that the redistricting plan will result in longer bus rides and more dangerous travel conditions for Body Camp students. Berger Aff., ¶¶ 10, 26, ECF #12. However, it remains unclear how many *minority* students will be subjected to such unsafe conditions. At the very least, Berger states that "nearly all of the minority students [at Body Camp] will have a longer commute." *Id.* ¶ 10. But a longer commute to school, standing alone, is inadequate to show that discriminatory intent played a role in the redistricting plan.

Because Plaintiffs have not presented sufficient evidence to show intentional

discrimination in either the closure of Body Camp or its redistricting plan, Plaintiffs have failed to establish, by a clear showing, that they are likely to succeed on the merits at trial.

### B. Irreparable Harm

In addition to establishing a likelihood of success on the merits, Plaintiffs must also show that they are likely to suffer irreparable harm in the absence of injunctive relief. *Winter*, 555 U.S. at 22. Plaintiffs claim they will suffer irreparable harm as a result of being denied their constitutional right to equal protection of the laws. It is well settled that the loss of constitutional freedoms, "for even minimal periods of time, unquestionably constitutes irreparable [harm.]" *See Elrod v. Burns*, 427 U.S. 347, 375 (1976) (citations omitted). Assuming Plaintiffs are able to prevail on the merits of their Equal Protection claim, they will suffer irreparable harm.

### C. Balance of Equities and the Public Interest

In considering whether to grant the requested injunction, courts "must [also] balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 30 (citation omitted). Further, "[i]n exercising their sound discretion, [courts] should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (citation omitted).

In balancing the equities and evaluating the public's interest in granting injunctive relief, a plaintiff's "delay [in requesting such relief] is . . . quite relevant." *See Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989). Here, Plaintiffs filed this action for injunctive relief over a year after the School Board's decision to close Body Camp, and if an injunction is granted, Bedford County will incur serious financial costs if Body Camp is required to reopen its doors in just a few weeks. Further, it's unclear whether the School Board will be able to find quality personnel to staff Body Camp for the upcoming school year. Dr. Schuch,

Superintendent of Bedford County Schools, states that "[t]eachers and principals serve on one-year contracts that are customarily offered and signed in late spring, so few teachers are available on the job market [during the summer months.]"  Defs.' Mem, Shuch Decl. Ex. 5, ¶ 16.

Given the foregoing, Plaintiffs have failed to establish that the balance of equities tips in their favor or that the public interest favors granting injunctive relief.

## IV. CONCLUSION

For the reasons stated on the record and in this opinion, Plaintiffs' motion for injunctive relief will be denied.  An appropriate order accompanies this memorandum opinion.

Entered this ___21st___ day of July, 2015

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

9